THE FARMERS' TRUST COMPANY, Appellant, v. ANNA LINN, Intervener.

**Fraudulent Conveyance:** EVIDENCE. Where money is obtained by a loan on the homestead, standing in the name of the wife, a purchase of personalty in the name of the wife, paid for by a portion of the money so obtained, is not fraudulent as to the creditors of the husband.

*Appeal from Woodbury District Court.*—HON. G. W. WAKEFIELD, Judge.

TUESDAY, OCTOBER 12, 1897.

THIS action was commenced at law against the defendant, Charles Linn, to recover the amount of a promissory note, and was aided by attachment. The writ of attachment was levied upon a grading machine of which the intervener claims to be the owner. Her claim of ownership was presented by a petition of intervention, to which the plaintiff filed an answer. There was a trial by jury on the issues thus presented, which resulted in special findings and a judgment in favor of the intervener. The plaintiff appeals.—*Affirmed.*

*Lohr, Gardiner & Lohr* for appellant.

*Carter & Brown* for appellee.

ROBINSON, J. — I.    On the twenty-fourth day of July, 1890, Charles Linn entered into an agreement in writing with the Austin Manufacturing Company for the purchase of the grader in question. It was delivered to him, and on the twelfth day of August, 1890, he paid therefor the contract price, one thousand, two hundred dollars. The money thus paid, and fifty

dollars for freight, was obtained of a local bank on two promissory notes which were signed by Linn, J. P. Blood, and F. B. Robinson, one of which was for four hundred and fifty dollars, and the other for eight hundred dollars. Blood and Robinson signed as sureties, and to secure them, Linn gave to them a mortgage on the grader. Robinson testifies that the four hundred and fifty dollar note was paid in the fall of the year 1890, or in the spring of the next year; that a part of the other note was paid in the year 1890, and the remainder in the year 1892 or 1893; and that these payments were made with money which belonged to Charles Linn and to Charles and A. B. Linn. In the year 1892, Charles Linn sold the machine to his brother, A. B. Linn, and took from him a mortgage on it, which, as we understand the record, was security for the unpaid part of the purchase price. In the latter part of the year 1890, John Brown and Anna Brown, through their agent, Robinson, made a loan of one thousand, two hundred dollars to Charles Linn, or to him and his wife, the intervener, and took as a security therefor a mortgage on the homestead of Charles Linn and his wife and upon an adjoining lot, and afterwards took an assignment of the mortgage on the grader given by A. B. Linn. That mortgage was renewed by A. B. Linn to the Browns, and the new mortgage was foreclosed by them, and the grader was sold thereunder in January, 1894. The sale was made to the mortgagees, although Robinson states that it was made for Charles Linn, who did not wish to be known as the purchaser; and that he afterwards directed that a bill of sale for the grader be made by the Browns to his wife, which was done. Charles Linn denies that he told Robinson that he did not wish to be known as the purchaser, and claims to have told him that the grader belonged to his wife from the first. The intervener claims that it was

in fact purchased of the Austin Manufacturing Company for her, and was paid for from the proceeds of the loan on the homestead. It is shown that the title to the homestead which the intervener and her husband mortgaged to the Browns was vested in the intervener, and that she had paid the larger part of the purchase price therefor with money which belonged to her. Both the intervener and her husband testify that the grader was purchased with the money which was obtained from the Brown loan, and that it belonged to her when the attachment was levied. The bill of sale given by the Browns was then on record, and the grader stood on a vacant lot near the premises of the intervener. Robinson testifies that the proceeds of the Brown loan were used, under the direction of Charles Linn, chiefly in paying his debts, and that only about two hundred dollars were paid to him, and that the notes for the grader were paid with money obtained from other sources. It is quite probable that this testimony is true, and that the intervener and her husband did not know just what application had been made of the money obtained from different sources, as Robinson appears to have paid out the money for the benefit of Linn, and probably under his direction, and retained possession of nearly all of his notes which were paid. But, however that may have been, the intervener could have obtained title to the grader when it was originally purchased substantially as she claimed, even though her husband used the proceeds of the homestead loan for his own purposes, and replaced them by money obtained from other sources. The purchase by the Browns at foreclosure sale, so far as is shown, was valid, although the consideration recited in the bill of sale is only one dollar, and the intervener did not pay anything for it at that time. The real character of the transaction between the Browns, Charles Linn, and the intervener, which included the foreclosure sale and

the giving of the bill of sale, is not fully shown. It does not appear that the foreclosure sale was invalid, and there is no ground for presuming that it was. The jury was authorized to find that it vested the title to the grader in the Browns, and they had the right to transfer it to the intervener, even for a nominal consideration. It appears that Charles Linn regarded the transfer as rightly vesting in the intervener the title to the grader, because of the money which had been obtained on her property, and used as stated. That the money so procured and used furnished a sufficient consideration for the transfer by the bill of sale, if procured by Charles Linn, is clear. We conclude that the evidence is sufficient to support the special findings of the jury, and that they authorized the judgment rendered in favor of the intervener.

II. The appellant complains of the ninth paragraph of the charge, which is as follows: "Par. 9. Plaintiff alleges the machine attached was at the time the property of Charles Linn, and that the transfer by bill of sale to intervener was without consideration, and made to defraud creditors of Chas. Linn, and therefore void. As a matter of law, the burden of so proving is upon plaintiff. If the bill of sale was without consideration, and made for the purpose of hindering or delaying creditors, the same would not be a defense against the attachment. So, if you find from the evidence that Charles Linn originally bought said machine, sold it to A. B. Linn, taking a mortgage; that said Chas. Linn thereafter foreclosed the mortgage, and caused a bill of sale to be made to intervener without any consideration paid or given by her, and with intent and purpose on his part to hinder, delay, or defraud his creditors,—then find for plaintiff against intervener." The appellant contends that the court erred in giving the last half of the paragraph, for the

alleged reason that the evidence showed without con-
tradiction that Charles Linn did originally buy the
machine, and cause it to be transferred to his wife with-
out consideration.    That, as we have seen, is not the
case.    There was evidence from which the jury may
have found a purchase by the wife for a full and valid
consideration.    The paragraph is criticised in other
respects, but what we have said disposes of most of
the questions thus presented, and the others are unim-
portant.    Although there is some evidence which tends
strongly to sustain the claims of the appellant, we do
not find any sufficient ground for interfering with the
judgment of the district court, and it is therefore
AFFIRMED.